McGREGOR W. SCOTT
United States Attorney
KATHERINE T. LYDON
SHEA J. KENNY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:17-CR-195 JAM |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM AND RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS TO PSR |
| v. | |
| GUSTAVO ARAUJO LERMA, Aka Hiram Enrique Velez, | DATE: December 3, 2019 TIME: 9:15 a.m. COURT: Hon. John A. Mendez |
| Defendant. | |

### I.    INTRODUCTION

The United States hereby recommends the Court sentence defendant Gustavo Araujo Lerma to a custodial term of 45 months imprisonment. The government recommends the Court overrule each of the defendant's objections to the Presentence Investigation Report.

### II.    PROCEDURAL HISTORY

The defendant, a Mexican citizen and national, perpetrated a 25-year fraud in which he took on the identity of a U.S. citizen named Hiram Velez. Using the Velez identity, the defendant was able to fraudulently obtain U.S. citizenship for his wife and three Mexican-born children, obtain United States passports and travel on them back to Mexico, cast ballots in American elections. When an audit by the Social Security Administration indicated that the defendant's passports had been obtained in the identity of a dead person, the Department of State, Diplomatic Security Service investigated and ultimately

GOV'T SENTENCING MEMO AND RESPONSE TO DEF'S
FORMAL OBJECTIONS TO PSR

1

arrested the defendant.

The defendant refused to accept then, and still apparently does not now, post-conviction, that the jig was up.  He took the government to trial and contested guilt.  In an effort to escape conviction on the aggravated identity fraud counts and the voting by alien counts – both of which required proof he wa an alien – he spun a wild yarn on the stand that he did not know his true parentage, and could have been a U.S. citizen.  With respect to the false statement on a passport application count, he would not concede the simplest of false statements: name, birthday, etc.   He After a 4-day trial, a jury convicted the defendant of all seven counts in the superseding indictment: aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Count 1), false statement in application for United States passport in violation of 18 U.S.C. § 1542 (Count 2), and voting by alien in violation of 18 U.S.C. § 611 (Counts 3-7).

The Probation Officer prepared a PSR, discussed in much more detail below.  *See* Dkt. No. 155. The Probation Office recommended a sentence of 42 months, at the low end of the guidelines range.  *See* PSR ¶ 94.

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends a sentence of 45 months.  This is the middle of the guidelines range of 18 - 24 months, plus the consecutive statutory sentence on Count 2.  *See* PSR ¶ 94.  A custodial term of 45 months would reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, protect the public from further crimes of the defendant, and, hopefully, deter the defendant and others from perpetrating this type of fraud.  *See* 18 U.S.C. § 3553(a).

The history and characteristics of the defendant, mostly known through the nature of his offenses, likewise support a mid-range 45 month sentence.  When he bought the identity documents of U.S. citizen Hiram Velez in 1992, the real Mr. Velez was still alive.  The defendant nonetheless moved fully into Mr. Velez's identity and inhabited it until he was caught 25 years later.  He used the identity to commit a long list of other crimes, by lying to numerous local, state, and federal agencies and abusing a slew of different government programs.  First, he obtained passports – the hardest to get and most secure form of identification issued by the U.S. government – and used those passports to cross the U.S. border as "Hiram Velez," flying back and forth to his hometown in Leon, Mexico.  He abused the U.S. immigration system, by lying on immigration applications to obtain legal permanent resident status and

GOV'T SENTENCING MEMO AND RESPONSE TO DEF'S
FORMAL OBJECTIONS TO PSR

2

eventually United States citizenship for his wife and three children.  And he voted, in numerous elections over the past twenty years.  In short, for the past 25 years, the defendant has routinely abused and defrauded bedrock institutions which the public deserves to have confidence in: the immigration system, the Department of State, and federal elections.

When apprehended, the defendant exhibited zero contrition.  Instead of accepting responsibility, he went to trial, took the stand, and lied to the jury for hours.  A 45-month sentence, squarely in the middle of the advisory guidelines range, is appropriate.

### IV.    RESPONSE TO DEFENDANT'S FORMAL OBJECTIONS TO PSR

The United States requests that the Court adopt the findings of the PSR filed on November 19, 2019.  Dkt. No. 155.  The Final PSR correctly found the total offense level to be 15, following the application of a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, and a criminal history category of I.  PSR ¶¶ 15-47 & p. 4.  This results in an advisory guideline range of 18-24 months imprisonment for Counts 2 through 7 (False Statement on Application for U.S. Passport in violation of 18 U.S.C. § 1542 [Count 2] and Voting by Alien in violation of 18 U.S.C. § 611 [Counts 3-7]), as well a 24-month mandatory sentence to run consecutive to any other term of imprisonment for Count 1 (Aggravated Identity Theft in violation of 18 U.S.C. § 1028A).  PSR p. 4.  The PSR correctly declined to apply a 2-level reduction for acceptance of responsibility.

The draft PSR initially did not apply the 2-level enhancement for obstruction of justice.  *See* Dkt. No. 152.  The government served informal objections on November 5, 2019, arguing for the application of the enhancement, as well as amendments to the "Personal and Family Data" section and additional amendments regarding the defendant's assertion that he had no history of domestic violence.  *See* PSR Attachment 3, Dkt. No. 154-3.

In reaching its guidelines calculations, the Final PSR correctly applied the 2-level enhancement for obstruction of justice and rejected the defendant's informal objections.  *See* PSR Attachments 1 & 2, Dkt. Nos. 154-1 & 154-2.  The defendant filed formal objections to the PSR on November 19, 2019, raising many of the same objections he raised in his informal objections.  For the reasons outlined below, the government opposes the defendant's formal objections and agrees with the PSR's calculation of the defendant's guidelines range.

A.     **The PSR Correctly Applied a 2-Level Enhancement for Obstruction of Justice.**

The defendant argues that the Court should not apply a 2-level enhancement for obstruction of justice with respect to Counts 2 through 7.  The defendant objects to Paragraphs 22-23 of the PSR, asserting that the defendant did not obstruct justice with respect to Count 2 (False Statement on Application for U.S. Passport).  *See* Defendant's Formal Objections at p.3.  He further objects to Paragraph 28, asserting that the defendant did not obstruct justice with respect to Counts 3 through 7 (Voting by Alien) because "[t]he defendant could have been convicted even if the jury had believed his testimony regarding these counts."  *See* Defendant's Formal Objections at p. 4.

An obstruction of justice enhancement should be applied with respect to each of the counts of conviction because the defendant willfully obstructed justice (or attempted to do so) when he took the stand and perjured himself on several material matters.  Application Note 2 to U.S.S.G. § 3C1.1 states that a defendant's denial of guilt is not included in the enhancement, "(except for a denial of guilt under oath that constitutes perjury)[.]" *See also United States v. Armstrong*, 620 F.3d 1172, 1177 (9th Cir. 2010).  As was proven at trial, the defendant is actually Gustavo Araujo Lerma, a Mexican citizen and national, who came to the United States sometime in 1992 and began living in the identity of Hiram Velez.  On the witness stand, the defendant denied being Gustavo Araujo Lerma, denied fathering 3 of his 4 children, and denied being married to his wife in Mexico.  In order to attempt to evade conviction on the counts which required the jury to determine that he was an alien, the defendant took the stand and testified to a vague, implausible, and outlandish life history where he could somehow have been born in the United States.  For example, the defendant claimed that he did not know where he had been born, but had been taken in by a Texan around age 4.  While still a young child, he claimed on the stand, he ran away and lived on his own, independently, going from town to town, being called names like "Parrot." He was unable to answer any concrete questions about his life until the point when he bought the identity documents of Hiram Velez in 1992.   He also refused to answer simple, direct questions on the witness stand, instead embarking on long narratives which required the Court to intervene and direct him to answer.

With respect specifically to Count 2 (False Statement on Application for a U.S. Passport), while the defendant agreed that he was not *born* with the name of "Hiram Velez," nor born in Puerto Rico on

the true Hiram Velez's birthday, nor assigned at birth the true Hiram Velez's social security number—each of which was a false statement on his applications for a U.S. passport—the defendant testified implausibly that he had legally acquired the Hiram Velez name, date of birth, place of birth, and social security number because the Secretary of State of Illinois had somehow provided the defendant with the true Hiram Velez's identity. The defendant further testified that the true Hiram Velez's identifiers were now, legally, his own by virtue of the State of Illinois and the biblical right of primogeniture. This assertion the he believed the identifiers belonged to him was a factual denial of the element that he knowingly made false statements on an application for a U.S. passport. The account of his life and beliefs the defendant provided was materially and willfully false, and rejected by the jury. In finding the defendant guilty of Count 2, the jury specifically rejected the defendant's testimony that he was, in fact, "Hiram Velez" and that he was legally entitled to use the Velez identifiers.

With respect to Counts 3 through 7, the jury was required to find that the defendant was an alien and not, as he claimed, a U.S. citizen. The government proved each of these counts by proving that the defendant was, in fact, Gustavo Araujo Lerma, a Mexican citizen.

The obstruction of justice enhancements in Paragraphs 22 and 28 are therefore correctly applied.

**B.    The PSR Correctly Declined to Apply a 2-Level Reduction for Acceptance of Responsibility.**

The defendant objects to the PSR's supposed failure to find that the defendant accepted responsibility. Specifically, the defendant argues that he accepted responsibility for Count 2 based on his stipulation to the admissibility of evidence which the government used to prove that the defendant made false statements in his application for a U.S. passport. *See* Defendant's Formal Objections at pp. 2–3. It is unclear whether the defendant is requesting that the Court grant a 2-level reduction for acceptance of responsibility; however, such a request should be denied based on a plain reading of the Sentencing Guidelines, as well as the fact that the defendant has not accepted responsibility for his criminal conduct.

First, an acceptance reduction would be precluded by U.S.S.G. § 1B1.1, which provides the General Application Instructions for the Guidelines. Section 1B1.1(a) provides that, in applying the guidelines, the Court is to first determine the offense guideline from Chapter Two applicable to the

offense of conviction (§ 1B1.1(a)(1)); then determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular Chapter Two guidelines (§ 1B1.1(a)(2)); then apply appropriate adjustments from Parts A, B, and C of Chapter Three (§ 1B1.1(a)(3); and then repeat steps (1) through (3) for each additional count of conviction and to group the various counts under Part D of Chapter Three (§ 1B1.1(a)(4)).  Only then, after the appropriate offense level has been calculated for each count of conviction and the total offense level is adjusted for grouping, the Court applies any adjustment for acceptance of responsibility pursuant to Part E of Chapter Three.  § 1B1.1(a)(5).  To the extent the defendant is arguing that an acceptance of responsibility adjustment pursuant to Part E of Chapter Three must be applied to each individual count prior to grouping, such that the defendant would receive a 2-level reduction in offense level for Count 2 alone, this would be a misstatement of the plain language of section 1B.1(a).

Second, the defendant has not accepted responsibility.  Rather than demonstrate acceptance of responsibility, the defendant went to trial, took the stand, and perjured himself by claiming not to know who he really is and where he was actually born.  He denied his true identity and falsely stated he was not the father to his own children.  And he maintained—and apparently still maintains—that his name is truly Hiram Velez and that he is a Puerto Rican-born U.S. citizen by virtue of an act of the Secretary of State of Illinois.  The jury rejected the defendant's testimony in convicting the defendant on all counts, including Count 2.  A downward adjustment for acceptance of responsibility is not warranted in this case.

**C.**    **The PSR Correctly Calculated the Offense Level for Count 2 (False Statement on Application for U.S. Passport).**

The PSR correctly calculated the adjusted offense level for Count 2 to be 14.  PSR ¶ 23.  This calculation includes the application of a 4-level enhancement under § 2L2.2(b)(3)(A) for fraudulently obtaining or using a U.S. passport.  PSR ¶ 19.  The defendant objects to the application of the enhancement, asserting that applying it would be double-counting due to the defendant's conviction for Aggravated Identity Theft.  Defendant's Formal Objections at p. 3.  The defendant is incorrect in asserting that the PSR improperly applied a 4-level enhancement when calculating the offense level for Count 2.  In calculating the offense level for Count 2, the PSR correctly applied the 4-level enhancement

under § 2L2.2(b)(3)(A) for using the fraudulent passport.  PSR ¶ 19.  Section 2B1.6 is the guideline section for Aggravated Identity Theft.  Application Note 2 to Section 2B1.6 provides that "if a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense."  2B1.6 App. Note 2.  The underlying offense for Count 1 (Aggravated Identity Theft) was making a false statement or claim of U.S. citizenship in order to register to vote or vote, in violation of 18 U.S.C. § 1015(f).  *See* Superseding Indictment, Dkt. 88.  Section 2B1.6 Application Note 2 is inapplicable because the underlying offense for Count 1 was not, as defendant suggests, for making a false statement in application for a U.S. passport.  The passport had nothing to do with him voting - it was not alleged that the defendant used the passport to register to vote, or in connection with voting himself.  The false declaration of U.S. citizenship occurred when the defendant, on November 8, 2016, falsely declared under penalty of perjury that he was a U.S. citizen in order to vote.  The PSR correctly applied a 4-level increase pursuant to § 2L2.2(b)(3)(A).

## D.  The PSR Correctly Applied U.S.S.G. § 3D1.2 to Group the Counts.

The defendant objects that the PSR improperly applied U.S.S.G. § 3D1.2 because, according to the defendant, Counts 2 through 7 should all be grouped together, rather than as two groups, pursuant to U.S.S.G. § 3D1.2(b).  *See* Defendant's Formal Objections, at pp. 4–5; *see also* PSR ¶¶ 30–33.  Section 3D1.2(b) provides that counts should be grouped together as closely related counts when the "counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan."  U.S.S.G. § 3D1.2(b).  Application Note 4 explains that this subsection "provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times."  U.S.S.G. § 3D1.2 App. Note 4.  Application Note 2 explains that, for offenses where society at large is the victim, the "victim" for purposes of U.S.S.G. § 3D1.2(b) "is the societal interest that is harmed," and counts are grouped together "when the societal interests that are harmed are closely related."  U.S.S.G. § 3D1.2 App. Note 2.  Here, the probation officer correctly grouped Counts 3-7 (the five Voting by Alien counts) as one group, and Count 2 (False Statement on Application for U.S. Passport) as a separate

group because: (1) these groups involve different criminal objectives and are not part of a common scheme or plan; and (2) the two groups involve harms to different societal interests.

First, contrary to the defendant's assertions, the defendant's actions in making false statements on a passport application, and his actions in illegally voting in five separate federal elections, were not "part of a single course of conduct with a single criminal objective" such that they "represent essentially one composite harm to the same victim" for purposes of U.S.S.G. § 3D1.2(b).  Count 2 was premised on a passport renewal application submitted by the defendant on or about March 11, 2009, in which the defendant provided a false name, place and date of birth, and social security number.  *See* Superseding Indictment, Dkt. 88.  In doing so, the defendant was attempting to fraudulently obtain a United States passport in order to pass as a U.S. citizen and to travel internationally as Hiram Velez.  Counts 3-7 are premised on the defendant's actions of illegally voting in five federal elections, over three years, knowing that he was not a United States citizen.  These criminal actions were not part of a single course of conduct—they represent six separate transactions on six separate dates.   Nor do they share a single criminal objective.  The defendant lied on a passport application in order to obtain a U.S. passport, and presumably, to travel internationally on a U.S. passport.  The defendant voted as an alien in order to vote in U.S. federal elections.  These are different criminal objectives, and one did not facilitate the other.[1]

To support his grouping argument, the defendant relies on the government's opposition to a motion to sever filed by the defendant pre-trial (a motion which was never adjudicated by the Court as it was rendered moot by the Superseding Indictment and dismissal of the co-defendant from the case).  The defendant does not explain why the standard for determining whether co-defendants are properly joined under Federal Rule of Criminal Procedure 8(b) should be used to determine whether counts of conviction are properly grouped under U.S.S.G. § 3D1.2(b).  Rule 8(b) provides that an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same act or transaction, or in the same series of acts or transactions, constituting an offense or

---

[1] Contrary to suggestions by the defendant, the government did not allege that the defendant used the fraudulently obtained passports in order to vote.  Indeed, in California, no identification is required in order to vote - so his possession of the highest possible and most secure form of identification was irrelevant.  The quality of Araujo Lerma's means of identification has no relation whatsoever to his commission of the crime of voting in a federal election.

offenses." Fed. R. Crim. Proc. 8(b). The goal of Rule 8(b) "is to maximize convenience and efficiency with a minimum of prejudice" and it should therefore be construed liberally in favor of joinder. *United States v. Sanchez-Lopez*, 879 F.2d 541, 550-51 (9th Cir. 1989). Thus, charges against multiple defendants are properly joined "whenever the common activity constitutes a substantial portion of the proof of the joint charges." *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir. 1970). In contrast, the consideration of U.S.S.G. § 3D1.2(b) is a narrower one: counts should be grouped only where they involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a commons scheme or plan. The defendant has provided no basis for importing legal standards from a completely inapposite analysis to make this determination.

Second, Count 2, on the one hand, and Counts 3-7, on the other, do not involve harm to the same societal interests. The statute of conviction for Count 2 criminalizes the making of a false statement on an application for a U.S. passport. This is not inherently an immigration-related offense; citizens and non-citizens alike are criminally liable for lying on a passport application. The societal interest at issue is the interest in preventing the fraudulent use and acquisition of identity documents which permit international travel. Counts 3-7, on the other hand, which charge voting by an alien, are concerned with the societal interest in the sanctity of federal elections, specifically in preventing non-citizens from voting in U.S. elections. Even if Count 2 required proving that the defendant was not a U.S. citizen—which it did not; the government was simply required to prove that the defendant made a false statement on the application—the counts would still not be grouped as a single group under § 3D1.2. Even where two offenses both involve alienage, they may nevertheless harm different societal interests and should therefore not be grouped under § 3D1.2. *See United States v. McLauling*, 753 F.3d 557 (5th Cir. 2014) (Illegal re-entry and alien in possession of a firearm not properly grouped under 3D1.2 because "they harm different societal interests . . . The criminalization of illegal re-entry enforces immigration laws, whereas the criminalization of firearm possession by an alien unlawfully in the United States, protects society from those deemed unqualified to possess firearms.") (internal quotation marks omitted and alterations accepted). The mere fact that the defendant's citizenship was relevant to Count 2 and Counts 3-7 does not mean that the charges harm the same societal interests.

Thus, because Count 2, on the one hand, and Counts 3-7, on the other, involve harms to different

victims or societal interests, and because they do not involve two or more acts or transactions connected by a common criminal objective, the PSR correctly grouped the charges into two groups, and the defendant's objection with respect to paragraphs 30-32 should be overruled.

### E.   The Defendant's Remaining Objections Should Also Be Overruled.

The defendant also objects that paragraph 1 of the PSR ("Charge(s) and Conviction(s)") should note the year that the crimes were committed. *See* Defendant's Formal Objections at p. 1. First, the defendant did not raise this objection in his informal objections. Second, the objection should be overruled because the relevant information is already included in paragraph 57 and in the Superseding Indictment.

The defendant further objects to the paragraphs 5-11 to the extent they—and the PSR generally—"assume[] that he is Gustavo Araujo Lerma." *See* Defendant's Formal Objections at p. 1. The defendant is Gustavo Araujo Lerma. This was proven at trial. The government established that the defendant was an alien for purposes of Counts 3-7 by proving that he was, in fact, Gustavo Araujo Lerma, a citizen and national of Mexico. The jury rejected the defendant's testimony that he was not Gustavo Araujo Lerma when it convicted him on these counts.

### V.   CONCLUSION

The government respectfully requests the Court overrule each of the defendant's objections to the PSR and sentence the defendant to 45 months in prison.

Dated:  November 26, 2019

McGREGOR W. SCOTT
United States Attorney

By:   /s/ KATHERINE T. LYDON
KATHERINE T. LYDON
SHEA J. KENNY

Assistant United States Attorney

GOV'T SENTENCING MEMO AND RESPONSE TO DEF'S
FORMAL OBJECTIONS TO PSR

10